1
2
3
4
5
6                    **UNITED STATES DISTRICT COURT**
7                         **DISTRICT OF NEVADA**
8
9
CLARENCE JAMES DOZIER,           )
10                                 )
                Petitioner,        )        3:08-cv-00190-RCJ-RAM
11                                 )
vs.                                )        **ORDER**
12                                 )
JACK PALMER, *et al.*,             )
13                                 )
                Respondents.       )
14 _____/
15
16        This action is a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This
17 matter comes before the Court on the merits of the petition.
   **I.  Procedural History**
18
        On November 17, 2000, the State charged petitioner in Las Vegas Justice Court by criminal
19
complaint with Count I, first degree kidnapping, Count II, administration of controlled substance to
20
aid commission of a felony, and Counts III-XIV, twelve counts of sexual assault.  (Exhibit 1).[1]  On
21
December 4, 2000, the State filed an amended criminal complaint, charging petitioner with Count I,
22
first degree kidnapping, Count II, administration of controlled substance to aid commission of a
23
felony, Counts III-VIII (six counts of sexual assault involving victim Michelle Platt occurring on
24
25 ────────────────
26        [1]  The exhibits referenced in this order are found in the Court's record at ECF Nos. 13 & 14,
which were filed with respondents' motion to dismiss.

11/15/2000) and Counts IX-XXVII (nineteen counts of sexual assault involving victim Cheryl Scott Dozier, petitioner's ex-wife, occurring between 1992 and 1997).  (Exhibit 2).  Petitioner waived the preliminary hearing.  (Exhibit 3).  On February 12, 2001, the State charged petitioner in the Eighth Judicial District Court by information with the same crimes contained in the amended criminal complaint.  (Exhibit 4).  Petitioner pled not guilty to all counts.  (Exhibit 44, on 2/13/01).  The court scheduled trial to start April 2, 2001.  (*Id.*).

Petitioner filed a motion to dismiss the information as to Counts IX-XXVII (applying to victim Cheryl Scott Dozier), alleging these offenses were outside the statute of limitations.  (Exhibit 5).  The State opposed the motion, noting that while the statute of limitations for sexual assault was four years after the commission of the offense, the period is tolled for a felony "committed in a secret manner," pursuant to NRS 171.095.  (Exhibit 6).  The State argued that Cheryl Scott Dozier was not aware of the sexual assaults at the time they occurred because she was unconscious.  (*Id.*).

On April 3, 2001, the court held a hearing on the motion to dismiss.  (Exhibit 7).  Following the testimony of Cheryl Scott Dozier, Cheryln Harris (petitioner's sister), and petitioner, the trial court denied the motion to dismiss.  (*Id.*, at p. 130).  The court found that the victim, Cheryl Scott Dozier, was clearly unconscious during the videotaped sexual acts, but left the question as to whether she was asleep or drugged to the jury.  The trial court found that the activities were clearly concealed from her.  (*Id.*).

On April 3, 2001, the State filed an amended information in open court, amending Counts IX-XXVII to reflect a date of 1992 to 1995.  (Exhibit 9).  Also on April 3, 2001, petitioner changed his plea, entering guilty pleas as to Count II, V, XXI, and XXVI of the amended information.  (Exhibit 8).  Petitioner filed a guilty plea memorandum in open court.  (Exhibits 8 & 10).

On June 6, 2001, petitioner, through his new attorney, filed a motion to withdraw his guilty plea.  (Exhibit 11).  On June 14, 2001, the court held a hearing on the motion to withdraw the guilty

2

1  plea.  (Exhibit 44).  Following testimony and argument, the court granted the motion.  (*Id.*).  The

2  court advised it would reset the trial at a hearing the next day.  (*Id.*).

3       On June 15, 2001, the court heard argument regarding a continuance of the trial.  (Exhibit

4  14).  The matter was set for trial to commence on July 23, 2001.  (*Id.*).

5        On July 17, 2001, petitioner moved to continue the trial date.  (Exhibit 15).  Defense

6  counsel argued for additional time to prepare for trial.  (*Id.*).  On July 20, 2001, the court held a

7  hearing on the motion to continue trial.  (Exhibit 17).  The court denied the motion to continue trial,

8  but gave counsel an additional day to prepare and ordered the jail to allow counsel to meet with

9  petitioner for view the videotapes.  (*Id.*).

10      An eight-day jury trial commenced on July 24, 2001.  (Exhibit 20).  Outside the presence of

11  the jury, the State sought to correct the amended information to change the name of Cheryl Scott to

12  Cheryl Dozier, to which defense counsel did not object.  (*Id.*, at p. 6; Exhibit 18).  The State further

13  advised it was preparing a second amended information to correct dates regarding the assaults on

14  victim Cheryl Scott Dozier from 1992-1997 to 1992-1998.  (*Id.*, at p. 13).  The court ordered the

15  filing of the second amended information over petitioner's objections.  (*Id.*, at p. 119; Exhibit 19).

16      The trial continued on July 25, 2001.  (Exhibit 23).  On July 30, 2001, Cheryl Dozier

17  testified.  (Exhibit 24).  The State noted its intent to revise the information to reflect recent testimony

18  to replace one of the digital penetration counts involving victim Cheryl Dozier to penetration with an

19  object.  (*Id.*, at p. 57).  Petitioner opposed the amendment.  (*Id.*, at p. 58).  The court overruled the

20  objection, noting the substitution would be for a specific delineated object so there was no prejudice.

21  (*Id.*).

22      Trial continued on July 31, 2001.  (Exhibit 25).  The State rested and the defense produced

23  several witnesses, including petitioner.  (*Id.*).  The State filed a third amended information in open

24  court, amending Count XII to reflect penetration with an object rather than digital penetration.  (*Id.*;

25  Exhibit 26).

26

1    On August 1, 2001, petitioner continued his testimony.  (Exhibit 27).  The defense rested and

2  the State produced rebuttal testimony.  (Exhibit 27).

3    On August 2, 2001, the parties presented closing arguments.  (Exhibit 28).  The jury returned

4  a verdict finding petitioner guilty of all counts.  (Exhibit 28, at pp. 78-79; Exhibit 29).

5    On September 19, 2001, petitioner was sentenced as follows: on Count I, a term of life with

6  the possibility of parole after five years served; Count II, 16-72 months consecutive to Count I;

7  Count III, life with the possibility of parole after ten years, consecutive to Count II; Counts IV-

8  XXVI, life with the possibility of parole after ten years consecutive to Count XVI.  (Exhibit 31).  The

9  court further ordered lifetime supervision to commence upon petitioner's release.  (*Id.*).  On

10  September 25, 2001, the court filed the judgment of conviction.  (Exhibit 32).

11    Petitioner filed a notice of appeal.  (Exhibit 34).  On October 5, 2004, the Nevada Supreme

12  Court filed its order of affirmance.  (Exhibit 36).  Remittitur issued November 8, 2004.  (Exhibit 36).

13    On October 18, 2005, petitioner filed a *pro per* post-conviction habeas petition in state

14  district court.  (Exhibit 37).  A hearing on the petition was held on March 3, 2006, and an order

15  denying the petition was entered by the state district court on July 13, 2006.  (Exhibit 41).

16    Petitioner appealed the denial of his state habeas petition.  (Exhibit 42).  On March 13, 2008,

17  the Nevada Supreme Court filed its opinion affirming the denial of the petition.  (Exhibit 43).

18  Remittitur issued on April 10, 2008.  (Exhibit 43).

19    This Court received petitioner's federal habeas petition on April 9, 2008.  (ECF No. 1).  By

20  order filed May 30, 2008, this Court ordered a response to the petition.  (ECF No. 5).

21    Respondents previously moved to dismiss the petition, arguing that several grounds had been

22  procedurally defaulted.  (ECF No. 12).  By order filed May 27, 2009, the Court denied the motion to

23  dismiss and directed respondents to file an answer.  (ECF No. 22).  On August 27, 2009, respondents

24  filed an answer addressing all grounds of the petition.  (ECF No. 27).  Petitioner filed a traverse on

25  October 27, 2009.  (ECF No. 33).

26

4

## II. Federal Habeas Corpus Standards

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413).  The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

5

1        In determining whether a state court decision is contrary to, or an unreasonable application of

2   federal law, this Court looks to the state courts' last reasoned decision.  *See Ylst v.*

3   *Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th

4   Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).  Moreover, "a determination of a factual issue made by

5   a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting

6   the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

7   **III.  Discussion**

8        **A.  Ground 1**

9        Petitioner claims in Ground 1 of the federal habeas petition:

10            Petitioner was denied his rights to notice of the nature and cause of the accusation against him and to due process of law, as guaranteed by the

11            6th and 14th Amendments of the U.S. Constitution, when he was subjected to a manditorily [sic] consecutive special sentence of

12            lifetime supervision punishment as a direct consequence of his convictions of sexual assault crimes that was [sic] not discernable from

13            the accusatory pleading against him.

14  (ECF No. 6, at p. 3).  Petitioner asserts that a special sentence of lifetime supervision, pursuant to

15  NRS 176.0931, is a punishment and the statutes cited in the complaint and information regarding the

16  sexual assault crimes did not refer to lifetime supervision as a punishment.  (*Id.*).  Petitioner cites

17  *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004),

18  arguing that the information must contain an allegation of each and every fact which is legally

19  essential to the punishment, the range of punishments, and any element which increases the range of

20  punishments.  (ECF No. 6, at pp. 4-5).  Petitioner alleges that the court cannot impose a punishment

21  element which increases the penalty for the crime which is not alleged in the information.  (*Id.*).

22       The Nevada Supreme Court found these claims were without merit.  (Exhibit 43, at p. 11).

23  NRS 176.0931 provides:

24            1.  If a defendant is convicted of a sexual offense, the court shall include in sentencing, in addition to any other penalties provided by

25            law, a special sentence of lifetime supervision.

26

1    2.  The special sentence of lifetime supervision commences after any
2    period of probation or any term of imprisonment and any period of
     release on parole.
                                        * * *
3    5.  As used in this section: . . .
          (c) "Sexual offense" means:
4              (1) A violation of NRS 200.366 . . . .

5   In the instant case, the jury found petitioner guilty of sexual assault in violation of NRS 200.364 and

6   200.366.  (Exhibit 29).  Imposition of lifetime supervision is mandatory under Nevada law when the

7   defendant is convicted of the delineated crime.  NRS 176.0931.

8         Petitioner's claim that the *Apprendi* and *Blakely* cases require the information to include

9   every essential element to punishment and the range of punishments, including the lifetime

10  supervision enhancement, is without merit.  In *Blakely*, the Court stated that "the statutory maximum

11  for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts

12  reflected in the jury verdict or admitted by the defendant."  *Blakely v. Washington*, 542 U.S. 296, 303

13  (2004).  This means that the "statutory maximum" is "not the maximum sentence a judge may

14  impose after finding additional facts, but the maximum he may impose *without any additional*

15  *findings.*"  *Id.* at 303-04 (emphasis added).

16        The plain language of NRS 176.0931 provides the court "shall" impose the enhancement of

17  lifetime supervision if the defendant is convicted of a specific crime.  The imposition of the special

18  sentence of lifetime supervision does not depend on any additional facts.  It only depends upon the

19  crime for which the defendant is convicted.  The special sentence of lifetime supervision is based on

20  the same facts as petitioner's conviction – facts which were found by the jury.  This Court denies

21  habeas relief as to Ground 1.

22  **B.  Ground 2**

23  Petitioner alleges in Ground 2 of the federal habeas petition:

24        Petitioner was denied his rights to a trial by jury and to due process of
         the law, as guaranteed by the 6th and 14th Amendments to the U.S.
25       Constitution, when he was deprived of the opportunity to have the jury,
         rather than the Court, make a factual determination of whether he had
26

7

> been convicted of a sexual offense and was subject to a mandatory,
> consecutive, special sentence of lifetime supervision punishment.

(ECF No. 6, at p. 7).  Petitioner alleges that the jury that convicted him of crimes did not convict him

of a sexual offense defined by NRS 176.0931(5) and did not determine that he was subject to

lifetime supervision.  Petitioner further alleges that the court's actions violated the Sixth Amendment

right to have all facts legally essential to the factual determination as to whether he was convicted of

a sexual offense.  (*Id.*, at p. 7-8).  Petitioner alleges that NRS 176.0931 is unconstitutional because it

permits the court, not a jury, to make the factual determination of whether the defendant was

convicted of a sexual offense.  (*Id.*, at p. 8).

The Nevada Supreme Court found that these claims were without merit.  (Exhibit 43, at p.

11).  As noted *supra*, the imposition of the special sentence of lifetime supervision does not require

the finding of any specific facts.  The only requirement is that the defendant be convicted of a crime

in a specific statute.  NRS 176.0931(5) defines "sexual offense" as including a conviction pursuant

to NRS 200.366.  The jury convicted petitioner of sexual assault pursuant to NRS 200.366.  (Exhibit

29).  There were no further facts for the jury to determine.  The facts which lead to the enhancement

were found by the jury in this matter.  Petitioner's grounds for relief fail and this Court denies habeas

relief as to Ground 2.

## C.  Ground 3

Petitioner claims the following in Ground 3 of the petition:

> Petitioner was denied his rights not to be subjected to multiple
> punishments for the same offense and to due process of law, as
> guaranteed by the 5th and 14th Amendments to the U.S. Constitution,
> when the Court made a factual determination in a proceeding
> subsequent to the trial proceeding that he had been convicted of a
> sexual offense and imposed upon him a second, additional,
> punishment for the sexual assault convictions.

(ECF No. 6, at p. 10).  Petitioner alleges that he was sentenced to "multiple punishments for the

same offense" when the court imposed lifetime supervision after sentencing him for the underlying

sexual assault offenses.  (*Id.*).  The Nevada Supreme Court found these claims were without merit.

1    (Exhibit 43, at p. 11).  The Double Jeopardy clause "protects against multiple punishments for the

2    same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984) (quoting *Brown v. Ohio*, 432 U.S. 161

3    (1977)).  This protection is designed to ensure that the court's sentencing discretion is confined to

4    the limit established by the state legislature.  *Johnson*, 467 U.S. at 499.  "Because the substantive

5    power to prescribe crimes and determine punishments is vested with the legislature, the question

6    under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of

7    legislative intent."  *Id.* (quotations omitted).

8          When evaluating whether a state legislature intended to prescribe cumulative punishments for

9    a single criminal incident under the Double Jeopardy Clause, a federal court is bound by a state

10   court's determination of the legislative intent.  *See Johnson*, 467 U.S. at 499; *Missouri v. Hunter*,

11   459 U.S. 359, 368 (1983).  In *Palmer v. State*, the Nevada Supreme Court addressed the question of

12   whether lifetime supervision was a direct or collateral consequence of a guilty plea to sexual assault.

13   59 P.3d 1192 (Nev. 2002).  In reviewing the legislative history, the court found that lifetime

14   supervision was intended as a non-punitive tool and as a civil penalty to oversee dangerous sexual

15   predators.  *Id.* at 1195.  The court found lifetime supervision was sufficiently punitive in nature to

16   render it a direct consequence of a guilty plea.  *Id.* at 1196.  The court noted that lifetime supervision

17   is mandatory and must be imposed in addition to any term of imprisonment, probation, or parole, as

18   a matter of law.  *Id.* at 1195, 1197.  The court did not find that the Nevada legislature intended

19   lifetime supervision to serve as a second punishment for the same crime.  *Id.*  As such, habeas relief

20   is denied as to Ground 3.

21        **D.  Ground 4**

22        Petitioner alleges in Ground 4 of the petition:

23              Petitioner was denied his rights to effective assistance of counsel and
                to due process of law, as guaranteed by the 6th and 14th Amendments of
24              the U.S. Constitution, when his trial counsel failed to object to the
                imposition of the special sentence of lifetime supervision sentence on
25              Petitioner at the sentencing proceeding based on the constitutional
                infirmities of that punishment addressed in Grounds 1 thru 3 of this

26

9

1    Petition and when his appellate counsel failed to raise those
     constitutional infirmities in that punishment in Petitioner's direct
2    appeal.

3    (ECF No. 6, at p. 13).  The Nevada Supreme Court found these claims without merit.  (Exhibit 43, at

4    p. 11).

5           Ineffective assistance of counsel claims are governed by the two-part test announced in

6    *Strickland v. Washington,* 466 U.S. 668 (1984).  In *Strickland*, the Supreme Court held that a

7    petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the

8    attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the

9    Sixth Amendment, and (2) that the deficient performance prejudiced the defense.  *Williams v.*

10   *Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687).  To establish

11   ineffectiveness, the defendant must show that counsel's representation fell below an objective

12   standard of reasonableness.  *Id.*  To establish prejudice, the defendant must show that there is a

13   reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

14   would have been different.  *Id.*  A reasonable probability is "probability sufficient to undermine

15   confidence in the outcome." *Id.*  Additionally, any review of the attorney's performance must be

16   "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in

17   order to avoid the distorting effects of hindsight.  *Strickland,* 466 U.S. at 689.  It is the petitioner's

18   burden to overcome the presumption that counsel's actions might be considered sound trial strategy.

19   *Id.*

20          Ineffective assistance of counsel under *Strickland* requires a showing of deficient

21   performance of counsel resulting in prejudice, "with performance being measured against an

22   'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v.*

23   *Beard,* 545 U.S. 374, 380 (2005) (quotations omitted).  If the state court has already rejected an

24   ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary

25   to, or an unreasonable application of the *Strickland* standard.  *See Yarborough v. Gentry,* 540 U.S. 1,

26

                                                        10

1   5 (2003).  There is a strong presumption that counsel's conduct falls within the wide range of

2   reasonable professional assistance.  *Id.*

3          The United States Supreme Court recently described federal review of a state supreme court's

4   decision on a claim of ineffective assistance of counsel as "doubly deferential."  *Cullen v. Pinholster*,

5   131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)).  The

6   Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . .

7   through the "deferential lens of § 2254(d).'"  *Id.* at 1403 (internal citations omitted).  Moreover,

8   federal habeas review of an ineffective assistance of counsel claim is limited to the record before the

9   state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 131 S.Ct. at 1398-1401.

10          Trial counsel was not ineffective for not opposing the imposition of lifetime supervision.

11   The imposition of lifetime supervision was appropriate, was mandatory on the state district court,

12   and was properly applied.  *See* NRS 176.0931(1).  The sentencing court has no discretion and must

13   impose a sentence of lifetime supervision when the conviction is for a sexual offense.  Counsel had

14   no basis to lodge an objection to the imposition of lifetime supervision.  As such, his performance

15   was not deficient.  Even if counsel had objected, petitioner cannot demonstrate that the result of the

16   sentencing would have been different, and as such, petitioner cannot demonstrate prejudice.

17          Petitioner also alleges that his appellate counsel failed to raise the claims presented in

18   Grounds 1-3 on direct appeal.  (ECF No. 6, at p. 13).  The *Strickland* standard applies to challenges

19   of effective appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  Appellate counsel has

20   no constitutional duty to raise every non-frivolous issue requested by the client.  *Jones v. Barnes*, 463

21   U.S. 745, 751-54 (1983).  Appellate counsel was not ineffective, as there was no basis for counsel to

22   raise such claims.  Habeas relief is denied as to the entirety of Ground 4.

23          **E.  Ground 5**

24   Petitioner alleges in Ground 5:

25          Petitioner was denied his rights to notice of the nature and cause of the
           accusation against him and to due process of law, as guaranteed by the

26

11

1
2
3
4

> 6th and 14th Amendments to the U.S. Constitution, when the State
> failed to provide him with notice in the accusatory pleading or any
> subsequent amended accusatory pleadings that he had alleged
> committed the crimes alleged in Counts 9-27 of the accusatory
> pleading in a "secret manner," thereby tolling the statute of limitations
> within which those crimes must be prosecuted until the discovery by
> the victim of those crimes.

5  (ECF No. 6, at p. 16).  Petitioner alleges that the State failed to allege in the information that the

6  crimes were committed in a "secret manner," any facts pertaining to the secret manner in which the

7  crimes were committed, or facts establishing when the victims discovered the commission of the

8  crimes.  (*Id.*, at p. 18).  Petitioner alleges that the State made the "secret nature" of the crimes an

9  essential element by relying on the tolling provision of NRS 171.095.  He further alleges that the

10  information must contain any tolling allegations with regard to the statute of limitations.  (*Id.*, at p.

11  19).

12      NRS 171.095 provides:

13
> 1.  Except as otherwise provided in subsection 2 and NRS 171.083 and
> 171.084:

14
> (a) If a felony, gross misdemeanor or misdemeanor is
> committed in a secret manner, an indictment for the offense must be
> found, or an information or complaint filed, within the periods of
> limitation prescribed in NRS 171.085, 171.090 and 624.800 after the
> discovery of the offense, unless a longer period is allowed by
> paragraph (b) or the provisions of NRS 202.885 . . . .

15
16
17

18      In addressing this issue in petitioner's appeal from his judgment of conviction, the Nevada

19  Supreme Court held:

20
> Dozier contends that the statute of limitations governing sexual
> assaults barred the State's prosecution of the separate counts involving
> Ms. A [Dozier's former spouse].  In this, he also argues that the State
> failed to adequately establish that the acts committed against her were
> done in secret so as to toll the limitations period.  We disagree.

21
22

23
> NRS 171.085(1) states that, "[e]xcept as otherwise provided in NRS . .
> . 171.095, an indictment for . . . sexual assault . . . must be found, or an
> information or complaint filed, within 4 years after the commission of
> the offense."  However, 171.095(1)(a) provides in relevant part:

24

25
> If a felony, gross misdemeanor or misdemeanor is
> committed in a secret manner, an indictment for the

26

1     offense must be found, or an information or complaint
    filed, within the periods of limitation prescribed in NRS
2     171.085 and 171.090 after the discovery of the offense.

3     "[A] crime is done in a secret manner, under NRS 171.095, when it is
    committed in a deliberately surreptitious manner that is intended to and
4     does keep all but those committing the crime unaware that an offense
    has been committed." [Footnote 2: Walstrom v. State, 104 Nev. 51, 56,
5     752 P.2d 225, 228 (1988), overruled by Hubbard v. State, 112 Nev.
    946, 920 P.2d 991 (1996).]. If substantial evidence supports a jury's
6     verdict, we will not disturb it on appeal. [Footnote 3: Washington v.
    State, 112, Nev. 1067, 1073, 992 P.2d 547, 551 (1996).].

7

8     In the present case, the parties agreed that the State bore the burden of
    proving by a preponderance of the evidence that Dozier committed the
9     assaults against Ms. A in a secret manner and filed the information
    within four years after discovery of the offenses. [Footnote 4: But see
10     Hubbard, 112 Nev. 946, 920 P.2d 99 (holding that criminal statutes of
    limitation are non-jurisdictional, affirmative defenses, thus placing the
11     burden of proof upon the defendant and thereby overruling Walstrom
    in part). We need not consider whether our ruling in Walstrom or
12     Hubbard applies to the charges at issue in this case, as the State agreed
    to accept the higher burden of proving by a preponderance of the
13     evidence that NRS 171.095(1) was satisfied.]. These were factual
    questions for the jury. Thus, the district court properly instructed the
14     jury to acquit Dozier if it found that he did not commit the offenses in
    a secret manner, or to acquit him if it found that the information was
15     not filed within four years after the discovery of the offenses.

16     By convicting Dozier, the jury implicitly concluded that the State met
    is burden concerning the secret nature of the offenses. Ms. A testified
17     that she was unaware of, and did not consent to, the acts portrayed in
    the videotape, and did not learn of the molestation until she viewed the
18     videotape in 2000. Additionally, the tape itself depicts an essentially
    unresponsive victim. While Dozier raised an inference at trial that Ms.
19     A knew of Dozier's actions before 2000, the jury could have
    discounted the evidence and chosen to believe Ms. A's trial testimony
20     instead.

21     We conclude that, under NRS 171.085, the district court properly
    denied Dozier's motion to dismiss the charges brought concerning Ms.
22     A and that substantial evidence supports the jury's implicit conclusion
    concerning the secret nature of these offenses.

23 (Exhibit 36, at pp. 4-6) (internal quotations in original). The factual findings of the state court are

24 presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving that

25 the state court's ruling was contrary to, or involved an unreasonable application of, clearly

26
13

1  established federal law, as determined by the United States Supreme Court, or that the ruling was

2  based on an unreasonable determination of the facts in light of the evidence presented in the state

3  court proceeding.  Habeas relief is denied as to Ground 5.

4        **F.  Ground 6**

5        Petitioner claims in Ground 6 of the petition:

6              Petitioner was denied his rights to effective assistance of counsel and
to due process of law, as guaranteed by the 6th and 14th Amendments of
7              the U.S. Constitution, when his trial counsel failed to object and raise
the issues presented in Ground 5 of this Petition at trial and when his
8              appellate counsel failed to raise those issues in his direct appeal.

9  (ECF No. 6, at p. 21).  Petitioner alleges that trial counsel failed to object to the State's failure to

10  provide notice in the information regarding the tolling provisions of NRS 171.095(1)(a), and failed

11  to seek dismissal of the counts not proven to be committed within four years of the filing of the

12  criminal complaint.  Petitioner further alleges that appellate counsel erred by failing to raise the issue

13  on direct appeal.  (*Id.*).  The Nevada Supreme Court found these claims without merit.  (Exhibit 43,

14  at p. 11).  Trial counsel was not ineffective for not opposing or otherwise objecting to the "secret

15  manner" provision and its appearance or lack thereof in the information.  As the Nevada Supreme

16  Court found, the statute of limitations is an affirmative defense, not an element of the crime.  An

17  affirmative defense need not be included in an information, only the elements of the crime charged.

18  *See Almendarez-Torres v. United States*, 523 US. 224, 228 (1998).

19        Moreover, trial counsel did in fact raise an objection to the statute of limitations in this matter

20  by filing a motion to dismiss.  (Exhibit 5).  The court denied the motion after a hearing.  (Exhibit 7).

21  There was no basis for counsel to challenge the statute of limitations when the State filed the

22  subsequent amended informations.

23        Likewise, appellate counsel was not ineffective for failure to raise an ineffective assistance of

24  counsel claim, as there was no basis for counsel raise such claims.  The court acted properly with

25  respect to the "secret manner" tolling provisions.  Petitioner fails to demonstrate that, had counsel

26

1    raised such a claim on appeal, he would have prevailed.  Rather, the Nevada Supreme Court

2    addressed the issue of statute of limitations and made a specific finding that the statute was a non-

3    jurisdictional affirmative defense and not an element of the crime.  (Exhibit 36, at pp. 4-6).  Neither

4    trial nor appellate counsel was ineffective, thus habeas relief is denied as to Ground 6.

5        **G.  Ground 7**

6        Petitioner alleges the following in Ground 7:

7            Petitioner was denied his rights to a fair trial, to notice of the nature
             and cause of the accusation against him, to effective assistance of
8            counsel and to due process of law, as guaranteed by the 6th and 14th
             Amendments of the U.S. Constitution, when the Court permitted the
9            State to amend the accusatory pleading after commencement of jury
             selection and when his appellate counsel failed to raise that issue in his
10           direct appeal.

11   (ECF No. 6, at p. 24).

12       The Nevada Supreme Court found the claims in Ground 7 without merit.  (Exhibit 43, at p.

13   11).  NRS 173.095(1) provides that a criminal complaint may be amended at any time before a

14   verdict is authorized: "The court may permit an indictment or information to be amended at any time

15   before verdict or finding if no additional or different offense is charged and if substantial rights of

16   the defendant are not prejudiced."  The application of NRS 173.095 is a question of state law.

17   Alleged errors in the interpretation or application of state law do not warrant habeas relief.  *Hubbart*

18   *v. Knapp*, 379 F.3d 773, 779-80 (9th Cir. 2004).  "Federal habeas corpus relief does not lie for errors

19   of state law . . . it is not the province of a federal habeas court to reexamine state court

20   determinations of state law."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (quotations and internal

21   citation omitted).

22       Even assuming this Court considered the merits, petitioner's claims in Ground 7 fail.

23   Petitioner alleges that the court erred in permitting the State to file the second and third amended

24   informations after the start of trial.  He alleges that he prepared his defense based on the allegations

25   in the amended information.  In the first amended information, the State alleged the crimes in Counts

26

                                                     15

1   IX-XXVII occurred between 1992 and 1995.  (Exhibit 9).  In the second amended information, the

2   State alleged the crimes occurred between 1992 and 1997.  (Exhibit 18).  In the next amended

3   information, the State alleged the crimes occurred between 1992 and 1998.  (Exhibit 19).  NRS

4   200.366(1) provides the required elements of sexual assault:

5               A person who subjects another to sexual penetration, or who forces
                another person to make a sexual penetration, or who forces another
6               person to make a sexual penetration of himself or another, or on a
                beast, against the will of the victim or under conditions in which the
7               perpetrator knows or should know that the victim is mentally or
                physically incapable of resisting or understanding the nature of his
8               conduct, is guilty of sexual assault.

9   The second amended information did not add an offense to the charged document. The only change

10  was to alter the possible years by one year.  This was not a new charge but an amendment to an

11  existing charge.  Petitioner had notice of this date at the hearing on the motion to dismiss, during

12  which Cheryl Scott Dozier testified that the third assault occurred in the spring of 1998.  (Exhibit 7,

13  at pp. 83, 95).  The alteration of the date by one year did not change the underlying facts and each

14  element of the crime.  The dates were not a necessary element of the crime.  Petitioner fails to allege

15  how the alteration of dates changed or prevented his presentation of a defense.  Petitioner had

16  adequate notice of the charges against him.

17          In the third amended information, the state changed Count XII from an allegation of digital

18  penetration to penetration with an object.  (Exhibit 26).  This was not a new charge.  The charge of

19  sexual assault did not change.  Sexual assault requires "sexual penetration" as an element of the

20  crime.  It does not require specific notice of the type of penetration or method of penetration.  The

21  third amended information substituted the form of penetration, but the underlying charge of

22  penetration in the course of committing a sexual assault did not change.  The object was revealed in

23  the course of viewing the videotape at the motion to dismiss hearing.  (Exhibit 7, at p. 90).  Petitioner

24  fails to allege how the alteration changed or prevented his presentation of a defense.  Petitioner had

25

26

16

1    adequate notice of the charges he faced.  Petitioner cites no United States Supreme Court authority

2    which prohibits the filing of an amended information during trial.

3          Petitioner further alleges there was insufficient evidence to prove the allegations in Counts IX

4    to XXVII of the amended information due to the dates cited, 1992-1997.  However, the 1997 and

5    1998 date changes were not significant in the statute of limitations argument.  The State filed the

6    original criminal complaint in November 2000.  (Exhibit 1).  The statute of limitations on a sexual

7    assault is four years.  NRS 171.085.  Therefore, any crime which occurred after November 1996

8    would be within the normal statute of limitations.  The crimes which occurred prior to November

9    1996 fell within the "secret manner" statute of limitations.  NRS 171.095.  Petitioner fails to allege

10   any facts to support his contention that there is insufficient evidence of the crimes in Counts IX-

11   XXVII.  This claim is conclusory and without merit.  *Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir.

12   1995) (mere conclusion of violation of federal rights without specifics fails to state a basis for habeas

13   relief).

14         Petitioner further alleges that appellate counsel was ineffective for failing to raise this issue

15   on direct appeal.  (ECF No. 6, at p. 24).  Petitioner fails to allege or demonstrate that he would have

16   succeeded on this issue on direct appeal.  Petitioner's claim of ineffective assistance of appellate

17   counsel fails.  This Court denies habeas relief as to the entirety of Ground 7.

18   **H.  Ground 8**

19   Petitioner alleges in Ground 8 of the petition:

20            Petitioner was denied his rights to a fair trial, to a presumption of
             innocence, to effective assistance of counsel and to due process of law,
21           as guaranteed by the 6th and 14th Amendments of the U.S. Constitution,
             when the Court instructed the jury that the State had the burden of
22           proving by only a preponderance of the evidence that the sexual assault
             crimes charged in the information were committed in a secret manner,
23           when his trial attorney failed to object to the instructions and when his
             appellate attorney failed to challenge that erroneous instruction in his
24           direct appeal.

25

26

                                              17

1   (ECF No. 6, at p. 27).  Petitioner alleges that the state district court erred in presenting a jury

2   instruction to the jury that the State had a burden of proving by a preponderance of evidence the

3   sexual assaults occurred in a secret manner.  (*Id.*).  He alleges that the State should have been

4   required to prove the dates the assaults occurred beyond a reasonable doubt.  (*Id.*, at p. 28).

5           Petitioner's allegations focus on state law grounds.  Issues relating to jury instructions are not

6   cognizable in federal habeas corpus unless they infect the entire trial to establish a violation of due

7   process.  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977).

8   Demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack

9   on the Constitutional validity of a state court's judgment requires the court to determine "whether the

10  ailing instruction by itself so infected the entire trial that the resulting conviction violates due

11  process," not whether the instruction is "undesirable, erroneous, or even universally condemned."

12  *Henderson v. Kibbe,* 431 U.S. at 154 (citations omitted); *Estelle v. McGuire,* 502 U.S. 62, 72 (1991).

13  In reviewing jury instructions, the court inquires as to whether the instructions as a whole are

14  misleading or inadequate to guide the jury's deliberation.  *U.S. v. Garcia-Rivera,* 353 F.3d 788, 791

15  (9th Cir. 2003) (citing *United States v. Frega,* 179 F.3d 793, 806 n.16 (9th Cir. 1999) (internal

16  citations omitted).  The question is whether an instruction so infected the entire trial that the resulting

17  conviction violated due process.  *Estelle*, 502 U.S. at 72.  An instruction may not be judged in

18  isolation, "but must be considered in the context of the instructions as a whole and the trial record."

19  *Id.*  Furthermore, jurors are presumed to follow the instructions that they are given.  *U.S. v. Olano,*

20  507 U.S. 725, 740 (1993).  Even assuming this Court considered the merits, petitioner's claims in

21  Ground 7 fail.  There is no United States Supreme Court case which clearly establishes that the

22  statute of limitations must be proven beyond a reasonable doubt.

23          Petitioner further alleges that trial counsel failed to object to the instruction, and appellate

24  counsel failed to raise the issue on direct appeal. (ECF No. 6, at pp. 29-30).  In addressing this issue,

25  the Nevada Supreme Court found and held:

26

18

In his petition, Dozier claimed that his trial counsel was ineffective for failing the challenge the jury instruction providing that the State only had to prove he committed the sexual offenses in a secret manner by a preponderance of the evidence.  We conclude that the district court did not err in rejecting the claim.

In order to establish a claim of ineffective assistance of trial counsel sufficient to invalidate a judgment of conviction, Dozier was required to demonstrate that his counsel's performance fell below an objective standard of reasonableness and that his counsel's errors were so severe that they rendered the jury's verdict unreliable.  The court need not address both components of the inquiry if an insufficient showing is made on either one.  As discussed below, we conclude that the jury was properly instructed regarding the State's burden of proof.  Therefore, Dozier has failed to demonstrate that any error by counsel rendered the verdict unreliable.

NRS 171.085(1) provides that an indictment, information, or complaint charging the crime of sexual assault must be filed "within 4 years after he commission of the offense."  Under NRS 171.095(1)(a), however, if the crime of sexual assault "is committed in a secret manner," an indictment, information, or complaint must be filed within four years "after the discovery of the offense."  Thus, NRS 171.095 provides for the tolling of the statute of limitations when certain felonies, including sexual assault, are committed in such a way that prevents or delays discovery.

This court considered the State's burden of proof on this exception to the statute of limitations in Walstrom v. State.  In particular, this court held that he statute of limitations was a "jurisdictional" requirement, and because it did not involve an element of the offense, the State was only required to prove the crime was committed in a secret manner by a preponderance of the evidence, rather than beyond a reasonable doubt.  Specifically, this court explained:

> The lesser standard is appropriate because proving the application of the exception to the statute is not the same as proving an element of the crime.  Proving the exception to the statute of limitations addresses the issue of the court's jurisdiction; proving an element of the crime concerns the issue of a defendant's guilt or innocence.  The considerations that require proof beyond a reasonable doubt do not apply when the State is merely attempting to prove jurisdiction.  Given the difficulty of proving the secret manner exception long after the commission of an offense, we see no sound reason to compound the difficulty by imposing a higher standard upon the State.

19

Subsequently, in <u>Hubbard v. State</u> (<u>Hubbard II</u>), this court expressly overruled <u>Walstrom</u>'s holding that the statute of limitations was jurisdictional and held instead that the "best reasoned approach is to treat criminal statutes of limitations as non-jurisdictional, affirmative defenses." But this Court did not address in <u>Hubbard II</u>, or in any subsequent decision, whether the preponderance standard approved in <u>Walstrom</u> survives this court's holding in Hubbard II. We now clarify that despite our holding in <u>Hubbard II</u> that the statute of limitations is an affirmative, non-jurisdictional defense, the State's burden of proof is still governed by the preponderance of the evidence standard, <u>i.e.</u>, the State must prove by a preponderance of the evidence that the statute of limitations is tolled because the charged offense was committed in a secret manner.

In addressing the State's burden to disprove an affirmative defense that negates an element of the criminal offense, the court has held that the State has the burden to disprove the defense beyond a reasonable doubt. As we explained in Walstrom, however, an affirmative defense asserting that the prosecution is barred by the statute of limitations does not involve an element of the offense implicating the defendant's guilt or innocence.

There is nonetheless a split of authority among jurisdictions regarding the government's burden of proof when the statute of limitations is asserted as an affirmative defense. For instance, in <u>Farrar v. State</u>, a Texas appellate court concluded that when some evidence is presented that the prosecution is time-barred and the defendant requests a jury instruction on the statute-of-limitations defense, the State must prove beyond a reasonable doubt that the prosecution is not time-barred. Likewise, the Hawaii Revised Statutes require the State to prove that a criminal prosecution for an offense is not barred by the statute of limitations beyond a reasonable doubt.

In contrast, some jurisdictions have taken the approach that the State is required to defeat a statute-of-limitations defense by a mere preponderance of the evidence. In <u>United States v. Gonsalves</u>, 675 F.3d 1050, 1051-52 (9th Cir. 1982), for example, the government appealed from an order dismissing an indictment as barred by the statute of limitations. The government argued that the statute of limitations was tolled during the time that Gonsalves was "fleeing from justice." Although the appellate court emphasized that all "essential elements of the crime" must be proven beyond a reasonable doubt, the court also determined that because a statute-of-limitations defense did not involve the issue of guilt, the government's burden to disprove such a defense was only by a preponderance of the evidence. The court reasoned that "an eventual guilty verdict is not rendered less reliable simply because the issue of fleeing from justice is determined by a less stringent standard."

20

1
2
3
4
5

> Similarly, in People v. Linder, 42 Cal. Rptr. 3d 496 (2006), a California appellate court held that a preponderance of the evidence standard is appropriate when the age of the minor victim tolled the statute of limitations for a sexual offense.  In so holding, the court stated that "the statute of limitations is not an 'element' of the offense insofar as the 'definition' of criminal conduct is concerned."  Further, "the statute of limitations is not 'an element of the offense' in the sense that it defines the actus reus or the mens rea which characterizes the crime."

6
7
8
9
10

> We conclude that those jurisdictions that endorse the preponderance standard present the better-reasoned approach.  The statute of limitations is not an element of the offense that the State should be required to prove beyond a reasonable doubt.  Thus, in this case, the trial court properly instructed the jury on the State's burden of proof regarding the secret manner in which Dozier committed the sexual offenses involving his ex-wife.  Therefore, trial counsel's failure to object to the instruction was not deficient performance, and the habeas court did not err in denying the claim.

11  (Exhibit 43, at pp. 5-10) (footnotes omitted).  This Court perceives no error at the state court level

12  that was so prejudicial as to have violated petitioner's fundamental due process rights and the right to

13  a fair trial.  The Nevada Supreme Court cited to and applied the correct federal standards.  Petitioner

14  has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an

15  unreasonable application of, clearly established federal law, as determined by the United States

16  Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of

17  the evidence presented in the state court proceeding.  Habeas relief is denied as to the entirety of

18  Ground 8.

19      **I. Ground 9**

20      Petitioner alleges in Ground 9 of the petition:

21
22
23
24

> Petitioner was denied his rights to a fair trial, to effective assistance of counsel and to due process of law, as guaranteed by the 6th and 14th Amendments of the U.S. Constitution, when the trial court refused to grant the defense a continuance of the trial date to prepare for trial and when his trial attorney failed to conduct adequate pre-trial investigation or to present evidence crucial to his defense at the trial proceeding.

25
26

(ECF No. 6, at p. 32).  The Nevada Supreme Court found these claims were without merit.  (Exhibit 43, at p. 11).  With respect to the allegation that the trial court erred in refusing to grant a continuance, petitioner makes no allegations to support this claim other than outlining the state district court procedural history.  (ECF No. 6, at p. 32).  Petitioner fails raise any specific claim in support of his allegation.  Petitioner cannot simply made a broad conclusory statement without some factual support.  Rule 2(c), Rules Governing Section 2254 Cases.  Petitioner fails to allege or demonstrate what additional action counsel may have taken, had the continuance been granted, which would have changed the outcome of the trial.  Petitioner fails to demonstrate any due process violation as a result of the district court's actions.  *See Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) (mere conclusion of violation of federal rules without specifics fails to state a basis for federal habeas relief).

Also in Ground 9, petitioner alleges that his trial counsel failed to conduct any pretrial investigation, failed to present any defense experts, and failed to interview and present lay witnesses during trial.  (ECF No. 6, at p. 33-35).  Petitioner specifically states that he is unable to demonstrate or identify any prejudice as a result of these alleged failures of counsel.  (*Id.*, at p. 34).  Petitioner does not allege what additional information would have been gained by additional investigation, or how the trial would have been different if the witnesses testified.  Moreover, since petitioner admits that he is unable to prove prejudice, one of the mandatory prongs of *Strickland*, his claim of ineffective assistance of counsel fails.  Habeas relief is denied as to Ground 9.

**J. Ground 10**

Petitioner alleges in Ground 10:

> Petitioner was denied his right to effective assistance of counsel and to due process of law, as guaranteed by the 6th and 14th Amendments of the U.S. Constitution, when his sentencing attorney failed to present crucial mitigating evidence to the Court at the sentencing proceeding.

(ECF No. 6, at p. 37).  Petitioner alleges that victim Michelle Platt expressed sympathy for him and indicated that she would appear at sentencing to request that petitioner serve no more than five years

and that all sentences be concurrent.  Petitioner alleges that trial counsel erred failing to advise Platt

of the continued sentencing date and to secure her presence.  (*Id.*, at p. 38).  The Nevada Supreme

Court found that this claim lacked merit.  (Exhibit 43, at p. 11).  Petitioner provides no evidence to

support his allegations.  Petitioner refers to the affidavit of Michelle Platt.  (ECF No. 6, at p. 37).  No

such affidavit was filed with the state district court, the Nevada Supreme Court, or with this Court.

Moreover, petitioner fails to demonstrate that Platt's testimony would have altered the outcome of

the sentencing.  During sentencing the court noted the receipt of many letters submitted by defense

counsel.  (Exhibit 31, at p. 2).  Petitioner has failed to demonstrate any evidence that Michelle Platt

would have testified at sentencing and that she would have sought leniency.  Petitioner fails to

demonstrate that counsel's actions in not having Platt testify during sentencing affected the outcome

of the sentencing, and thus fails to demonstrate any prejudice by counsel's actions.  Petitioner's

claim of ineffective assistance of counsel fails.  The Court denies habeas relief as to Ground 10.

**IV.  Certificate of Appealability**

In order to proceed with an appeal, petitioner must receive a certificate of appealability.  28

U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951

(9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a

petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a

certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84

(2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484).  In

order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are

debatable among jurists of reason; that a court could resolve the issues differently; or that the

questions are adequate to deserve encouragement to proceed further. *Id.*  This Court has considered

the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a

1  certificate of appealability, and determines that none meet that standard.  The Court will therefore

2  deny petitioner a certificate of appealability.

3  **V.  Conclusion**

4     **IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus is **DENIED**

5  **IN ITS ENTIRETY**.

6     **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

7  **APPEALABILITY.**

8     **IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT**

9  **ACCORDINGLY.**

10     Dated this 2nd day of August, 2011.

11

12

13

14     _____

15     UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

24